IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRISEL BAUTISTA o/b/o J.L.R., <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, <br><br> Defendant. | CIVIL ACTION <br> NO. 13-0388 |

**OPINION**

**Slomsky, J.**                                                                                                           **August 10, 2015**

**I.  INTRODUCTION**

Before the Court are the Objections of Plaintiff, Grisel Bautista,[1] on behalf of ("o/b/o") her minor son, J.L.R.[2] to United States Magistrate Judge M. Faith Angell's Report and Recommendation. (Doc. No. 28.) On January 24, 2013, Plaintiff initiated this action by filing a Motion for Leave to Proceed in Forma Pauperis. (Doc. No. 2.) On March 21, 2013, Plaintiff filed a Complaint against Defendant Carolyn W. Colvin, the Commissioner of the Social Security Administration ("SSA"), alleging that Defendant wrongfully denied Plaintiff supplemental security income ("SSI") under the Social Security Act. (Doc. No. 3.) On November 25, 2013, the Court referred the case to Magistrate Judge Angell for a Report and Recommendation ("R&R"). (Doc. No. 19.) On November 7, 2014, Magistrate Judge Angell

---

[1]  In the Administrative Record established during the Social Security Administration's multiple step review process, Plaintiff is referred to as Grisel Reyes, but in all filings with the Court, she is referred to as Grisel Bautista. The Court will refer to Plaintiff as Grisel Bautista to remain consistent with the Complaint and other Court documents.

[2]  Several of Plaintiff's filings include a case caption with her son's initials listed as "J.G.L." instead of "J.L.R." (See Doc. Nos. 11, 12, 14, 16, 18, 23, 28). The Court will refer to Plaintiff's son as his initials appear on the docket, "J.L.R."

issued the R&R (Doc. No. 26), and on November 24, 2014, Plaintiff filed timely Objections. (Doc. No. 28.) After an independent review of the record, and for reasons that follow, the Court will adopt the R&R.

## II.     PROCEDURAL AND FACTUAL BACKGROUND

### A.     Procedural History

On February 3, 2009, Plaintiff protectively filed[3] an application for SSI under Title XVI of the Social Security Act, 42 U.S.C. § 1381, on behalf of J.L.R., her then ten-year-old son. (Administrative Record ("R.") at 16.) Plaintiff alleged that J.L.R. suffered from the following disabilities since he was born on June 26, 2000: (1) Attention Deficit Hyperactivity Disorder ("ADHD"); and (2) Oppositional Defiant Disorder ("ODD"). (R. at 16, 19.) On May 21, 2009, the SSA denied the application after finding that "[J.L.R.] is not disabled . . . under our rules." (Id. at 146.) Specifically, the SSA found that while J.L.R. apparently suffers from ADHD and ODD, the severity of his condition "is not of the severity which is required to receive disability benefits." (Id.)

Following the denial, Plaintiff made a timely request for a hearing on the decision (R. at

---

[3]  Protective filing status

>   is achieved once an individual contacts the Social Security Administration (SSA) with the positive stated intent of filing for Social Security Disability benefits. Once this status is achieved, the initial contact date is considered a claimant's application date, even if it is earlier than the date on which the SSA actually receives the completed and signed application. This earlier filing date can affect a claimant's entitlement date, which in turn affects the eligibility for benefits and back pay.

Social Security Disability Help, http://www.disability-benefits-help.org/glossary/protective-filing (last updated 2014).

153),[4] and a hearing was held on June 24, 2010 before Administrative Law Judge ("ALJ") Sherman S. Poland. (Id. at 33.) On September 23, 2010, ALJ Poland issued a decision denying Plaintiff's claim for SSI. (Id. at 16-29.) Plaintiff next filed a timely appeal of the decision to the Appeals Council (Id. at 10). On May 23, 2012, the Appeals Council denied Plaintiff's request for review.[5] (Id. at 1-3.) As a result, the decision of the ALJ is the final decision of the Commissioner of the SSA, Carolyn Colvin ("the Commissioner").

On January 24, 2013, Plaintiff brought this action on behalf of J.L.R. pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of the final decision of the Commissioner denying her claim for SSI benefits under Title XVI of the Social Security Act. (Doc. No. 1.) After the parties submitted briefs, Magistrate Judge Angell issued an R&R on November 7, 2014 finding that substantial evidence supported the ALJ's decision. (Doc. No. 26.) Plaintiff filed Objections to the R&R on November 24, 2014. (Doc. No. 28.) The matter is now ripe for disposition, and for reasons that follow, the Court will overrule Plaintiff's Objections and affirm the final decision of the Commissioner.

### B. Disability Background

In 2004, J.L.R was diagnosed with ADHD and ODD (Doc. No. 26 at 8.) The Administrative Record reveals that J.L.R. was prescribed various drugs to address his symptoms including Adderall, Ritalin, Remeron, Dexedrine, and Dextrostat. (R. at 197, 204, 316, 322, 343,

---

[4] An applicant may appeal an "initial determination" made by the SSA. The four levels of appeal include: (1) a request for reconsideration; (2) a hearing before an Administrative Law Judge; (3) a request for review by the Appeals Council; and (4) filing a civil action in Federal Court. Social Security Administration, Understanding Supplemental Security Income Appeals Process, http://www.ssa.gov/ssi/text-appeals-ussi.htm (2015 edition).

[5] Since the date of ALJ Poland's decision, Plaintiff has obtained disability benefits for J.L.R. The benefits began on November 1, 2010. (Doc. No. 26 at 2.) The Appeals Council considered this fact in their decision but "found that this information does not warrant a change in the [ALJ's June 2010] decision." (Id.)

349.) In addition to taking medication, J.L.R. received weekly psychotherapist sessions, bi-weekly family based therapy sessions, and was enrolled in a special program at school. At least since 2008, J.L.R. received the following "wraparound services"[6] each week: ten hours of home Therapeutic Staff Support ("TSS"); three hours of therapy with a Behavior Specialist; two hours of Mobile Therapy, and fifteen hours of TSS at school. (Id. at 331.) As of November 12, 2008, J.L.R. was approved to receive twenty-five hours of TSS at school. (Id. at 304.)

J.L.R. was also hospitalized on two occasions at the Horsham Clinic. On August 13, 2009, J.L.R. was hospitalized due to "angry outbursts," an "increase in impulsivity" and out of character behavior. (R. at 277.) Hospital staff recorded his behavior as "moderate" and compliant with medication. (Id.) On September 11, 2009, J.L.R. was hospitalized for being "defian[t]" and "oppositional," and his behavior was again recorded as "moderate." (Id. at 279.)

Following these hospitalizations, from October 8, 2009 to December 16, 2009, evaluations from the Horsham Clinic consistently noted that J.L.R. was improving. (R. at 359-78.) Specifically, the evaluations show that J.L.R. was "compliant with medication," a high performer at school, and that he could continue to improve by adjusting his medication. (Id.) Further, mental health records created between October 30, 2009 and March 26, 2010 note that J.L.R's defiant episodes at school decreased from 3-4 per day to 1-2 per day and that "he is also beginning with the assistance of his [mobile therapist] to share his feelings and needs openly with [his] mother . . . instead of acting out (running a tantrum—screaming, talking back, yelling,

---

[6] Wraparound services are services provided to youth at home and in the community in lieu of residential treatment. To facilitate these services, "a care coordinator is assigned to a family and is responsible for creating a treatment plan for the child and family that incorporates multiple systems. The care coordinator then works with a team consisting of family members, service providers, and community members to ensure the child is receiving the necessary services at home, school, and within the community." Yael Zakai Cannon, There's No Place Like Home: Realizing the Vision of Community-Based Mental Health Treatment, 61 DePaul L. Rev. 1049, 1115 (Summer 2012).

and storming out of the room)." (Doc. No. 26 at 6.) Accordingly, as of June 2010, the most recent date his teacher filled out a questionnaire about him, J.L.R.'s ADHD and ODD were under control with the use of medication and therapy. (R. at 261-68.)

## III. LEGAL STANDARD

### A. Judicial Review of Disability Decisions.

The Social Security Act provides for judicial review of any "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. § 1383(c)(d). In other words, a District Court may review the decision of the ALJ or of the Appeals Commission. Id. When reviewing a denial of disability benefits, the court may not independently weigh the evidence or substitute its own conclusions for those reached by the ALJ. See Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Rather, the court must review the factual findings presented in order to determine whether substantial evidence supports the ALJ's decision. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). As such, substantial evidence is "less than a preponderance" and requires only "more than a mere scintilla." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (quoting Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971)). If the ALJ's decision is supported by substantial evidence, the court may not set the decision aside, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

With respect to a Plaintiff's timely made and specific objections, the court must review the objections de novo. 28 U.S.C. § 636(b)(1). After reviewing the objections, "[the court] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. It is also within the court's discretion to rely on the magistrate judge's proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 676 (1980).

**B.     Disability Determination Under the Social Security Act**

The Social Security Act authorizes several classes of disability benefits, including benefits in the form of supplemental security income ("SSI"). In order to qualify for SSI, a claimant must be classified as disabled under the Act and the accompanying regulations. The rules applicable to a child alleging disability prescribe the following questions which an ALJ must consider: (1) whether the child is engaging in substantial gainful activity; (2) whether the child has a mentally determinable impairment (physical or mental) or combination of impairments that is severe; and (3) whether the child's impairment(s) (a) meets, (b) medically equals, or (c) functionally equals in severity any of the listed impairments found in 20 C.F.R. § 404, Subpt. P., App. 1. See 20 C.F.R. § 416.924(a).

As noted above, the third prong can be satisfied in three circumstances. First, it is satisfied where the child's impairment is a listed disability in 20 C.F.R. § 404, Subpt. P., App. 1. Second, it is satisfied where the child's impairment "medically equals" one of the impairments listed in the above regulation because the child's impairment is at least equal in severity and duration to the listed impairment. Id. § 416.926(a). And third, it is satisfied where the child's impairment "functionally equals" one of the impairments listed in the above regulation. Id. § 416.926a(a).

With respect to the third circumstance, a child's impairment "functionally equals" a listed impairment when the child's impairment is severe and results in [a "marked" limitation] in two domains of functioning or in an "extreme" limitation in one domain [of functioning]." Id. The domains described in the functionally equivalent inquiry include: (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objections; (5) ability to care for oneself; and (6) health and physical well-being. Id. § 416.926a(b)(1)(I)-(vi).

A "marked" limitation in a domain is found when an impairment interferes seriously with a child's ability to independently initiate, sustain, or complete activities. Id. (emphasis added). A "marked" limitation is more than moderate but less than extreme. Id. An "extreme" limitation is found when the impairment interferes very seriously with the child's ability to independently initiate sustain or complete activities. Id. § 416.926a(e)(2) (emphasis added). An "extreme" limitation is more than "marked" and is a description limited to the worst limitations. Id.

## V. THE ALJ'S DECISION

Here, the ALJ made the following findings with respect to J.L.R.'s disabilities. Looking at the first prong—whether J.L.R. "is engaging in substantial gainful activity"—the ALJ concluded that as a ten-year-old child, J.L.R. has never worked and thus has not engaged in substantial gainful activity. (R. at 19.) With respect to the second prong—whether the child has a mentally determinable impairment that is severe—the ALJ concluded that J.L.R. suffers from severe ADHD and ODD thus satisfying this prong. (Id.) The ALJ found, however, that J.L.R. could not satisfy the third prong—whether the child's impairments meet, medically equal, or functionally equal in severity the impairments listed in 20 C.F.R. § 404, Subpt. P., App. 1. (Id.) The ALJ explained this conclusion as follows:

> . . . [T]he undersigned finds that [] the claimant's ADHD and ODD impairments neither meet nor are equivalent in severity to the requisite criteria as delineated in Listings 112.08 [Personality Disorders] and 112.11 [ADHD] because the evidentiary record in its entirety supports a conclusion [that] the claimant has the following limitations set forth in "Part B" of the mental listings: no more than mild to moderate restriction of age-appropriate cognitive/communicative function; no more than mild to moderate restriction of age-appropriate social functioning; no more than mild to moderate restriction of age-appropriate personal functioning; and no more than mild to moderate difficulties in maintaining concentration, persistence, or pace.

(Id. at 19-20.)  In reaching his conclusion, the ALJ "evaluated how the child functions in all settings and at all times, as compared to other children the same age who do not have impairments." (Id. at 20.)  Furthermore, the ALJ "considered all relevant evidence in the case [Administrative Record], which included objective medical evidence and other relevant evidence from medical sources." (Id.)  (Doc. No. 26 at 16.)  Specifically, the ALJ reviewed:

- Objective educational evidence: Teacher questionnaires, observation reports, educational records, and function reports.  (Doc. No. 10-1 at 2, 10-6 at 1.)

- Objective medical evidence: medication notes, discharge notes, emergency room records, medical records, biopsychosocial evaluations, discharge instructions, mental health records, and treatment records.  (Doc. No. 10-6 at 1.)

- Information from "other sources," including school teachers, family members, or friends, J.L.R.'s statements, statements from J.L.R.'s parents and other caregivers, and "any other relevant evidence . . . including how [J.L.R.] functions over time and in all settings."  (R. at 21.)

In addition, the ALJ held a hearing on June 24, 2010 where he heard testimony from teachers, the state medical examiner, Plaintiff, and J.L.R.  (Doc. No. 26 at 2.)

The ALJ observed many inconsistencies in the Administrative Record and thus relied on the objective medical and educational evidence, as well as "[J.L.R.'s] demeanor at the hearing,

8

the reports of credible educational and medical sources, and the degree of support services and medical treatment required [to treat J.L.R.]." (Doc. No. 26 at 9.)

The ALJ further explained in his decision that he accorded great weight to the assessments provided by J.L.R.'s teachers and the state agency medical consultant

> because they have provided specific reasons for their assessments demonstrating that their appraisals were well grounded in the educational and medical evidence of record, because they have cited specific limitations consistent with the evidentiary record as a whole, because educational and medical evidence received following the dates of their assessments does not offer any credible indication or suggestion of substantive limitations in excess of the cited opinions, and because any inconsistencies in their conclusions are minor and inconsequential at best.

(R. at 9.) In conclusion, the ALJ summarized:

> [J.L.R.] does not have an extreme or marked functional limitation in any domain; [J.L.R.] has more than minimal but less than marked functional limitation in the 'attending and completing tasks,' 'interacting and relating with others,' and 'caring for one's self' domains; [J.L.R.] has no functional limitation in the 'acquiring and using information,' 'moving about and manipulating objections,' and 'health and physical well-being' domains. Because [J.L.R.] does not have an extreme limitation in any domain nor marked limitation in at least two domains, [J.L.R.'s] ADHD and ODD impairments are not found to be functionally equivalent in severity to the listings. Accordingly [J.L.R.] is not disabled as that term is defined within the [SSA] and regulations.

(R. at 29.)

## VI. ANALYSIS

On November 7, 2014, after considering the ALJ's opinion and the Administrative Record, Magistrate Judge Angell issued an R&R finding that there was substantial evidence to support the ALJ's denial of benefits. (Doc. No. 26.) Plaintiff timely raised three Objections to the R&R. First, Plaintiff contends that the ALJ erred by failing to follow the regulations when rating J.L.R.'s limitations, and by failing to properly consider relevant and probative evidence of record. Second, Plaintiff argues that the ALJ committed reversible error by failing to find a "marked" limitation in the domain of "attending and completing tasks." And third, Plaintiff

claims that the ALJ committed reversible error by failing to find a "marked" limitation in the domain of "interacting and relating with others." (Doc. No. 28.) The Court will discuss each Objection in turn.

### A. The ALJ Followed the Regulations When Rating J.L.R.'s Limitations and Considered All Relevant and Probative Evidence

Plaintiff's first Objection is that "[t]he ALJ erred by failing to follow the regulations when rating [J.L.R.'s] limitations, and by failing to properly consider relevant and probative evidence of record." (Doc. No. 28 at 2.) In support of the first part of this Objection—that the ALJ failed to follow regulations, Plaintiff states that the ALJ and Magistrate Judge erred in using "boilerplate language" regarding the "child disability sequential analysis."[7] (Id.) In support of the second part of this Objection—that the ALJ failed to consider "all relevant and probative evidence," Plaintiff contends that the ALJ failed to consider: (1) that J.L.R. was psychiatrically hospitalized twice at age nine; (2) the degree of "wraparound services" that J.L.R. received per week; and (3) the narrative reports drafted by J.L.R.'s teachers.

With respect to the first part of the Objection regarding the use of "boiler plate language," it is well settled by the Third Circuit that "the ALJ [is not required] to use particular language or adhere to a particular format in conducting his analysis." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). Plaintiff fails to include any support for this argument aside from stating generally that the use of boilerplate language is inadequate. Accordingly, although Plaintiff insists that this "boilerplate language" is not acceptable, it is clear that no "particular language or

---

[7] The "child disability sequential analysis" refers to the three-step test that the ALJ employed in making his determination that J.L.R. is not disabled. The three-step analysis includes a determination as to: (1) whether the child is engaging in substantial gainful activity; (2) whether the child has a mentally determinable impairment (physical or mental) or combination of impairments that is severe; and (3) whether the child's impairment(s) meets, medically equals, or functionally equals in severity any of the listed impairments found in 20 C.F.R. § 404, Subpt. P., App. 1.

10

format" is required when making a disability determination. Thus, this argument is without merit.

With respect to the second part of the Objection, Plaintiff argues that the ALJ and Magistrate Judge failed to acknowledge: (1) that J.L.R. was hospitalized twice; (2) that J.L.R. received "wraparound services" including in-home Therapeutic Support Staff, a Behavioral Specialist, a Mobile Therapist, and an in-school Therapeutic Support Staff worker; and (3) the narrative reports from J.L.R.'s teachers and TSS workers. (Doc. No. 28 at 2-4.) The language of the ALJ's opinion and Magistrate Judge's R&R, however, belie this claim.

Regarding J.L.R.'s hospitalizations, the ALJ cites to the notes from the Horsham Clinic kept during J.L.R.'s hospitalizations, specifically noting that staff recorded that "[J.L.R.'s] episodes of defiance have 'decreased from 3-4 episodes per day to 1-2 episodes.'" (R. at 23.) Moreover, the ALJ includes the hospitalization records among an exhaustive list of medical and educational evidence he considered in making his disability determination. (Id. at 22.) Therefore, it is clear that the ALJ did consider these hospitalizations and used the staff's notes to support the fact that over time, J.L.R.'s episodes of defiance decreased with the use of medicine and therapy.

Regarding the wraparound services, the ALJ noted in his opinion that he considered "that [J.L.R.] sees a psychotherapist weekly, that he is enrolled in bi-weekly family based therapy sessions, [and] that he has a therapist who visits him at home twice a week for two hours . . . ." (R. at 21.) Moreover, the ALJ acknowledged that "[J.L.R.] continued to be enrolled in wraparound support services . . . [and] that [J.L.R.'s] support services and treatment regimen have been less than fully successful in alleviating his symptoms of mental distress." (Id.)

11

Regarding the narrative reports, Plaintiff contends that "the Magistrate Judge, like the ALJ, fails to acknowledge the narrative reports in the record from J.G.L.'s teachers and his [Therapeutic Support Staff] worker." (R. at 4.) The specific reports Plaintiff cites to include Observational Reports by "Mrs. Camilleri" on March 6, 2007, by "Ms. Vasquez" on February 29, 2008, and an Evaluation by Ama Paasewe from March 26, 2009. (Id. at 181-82, 338, 386.) Again, the text of the ALJ's opinion contradicts this Objection.

First, the ALJ included these three reports from among the eighteen documents listed as part of the relevant "educational and medical evidence" he considered. (R. at 21.) Specifically, with respect to Ms. Vasquez's report from February 29, 2008, the ALJ cites to this report along with three others in support of the statement "[w]hile other teachers have more recently indicated that [J.L.R.] displays a variety of maladaptive behavior problems such as aggressivity [sic], defiance, disruptiveness, hyperactivity, secrecy, etc. . . . these teachers have also appraised [J.L.R.] as no more than one serious degree of limitation out of fifty-three areas appraised." (Id.)

With respect to Mrs. Camilleri, the ALJ states that he "has accorded great weight to [the] assessment as to the nature and severity of [J.L.R.'s] functional limitations because Jamie Camilleri [and] Ms. Vasquez . . . are educational sources who have had first person and prolonged contact with [J.L.R.]." Although the ALJ did not cite specifically to Mrs. Camilleri's report of March 6, 2007, it is clear that he reviewed her assessments in making the above statement. See Venturino v. Colvin, No. 13-6219, 2015 WL 1229792, at *2 (E.D. Pa. Mar. 17, 2015) (noting that although the ALJ did not specifically discuss certain assessments, "the ALJ plainly considered these scores as they are the factual basis for his comments . . . .").

On that same note, while the ALJ did not specifically address Ama Paasewe's report of March 26, 2009, he quoted the report when he stated that "[J.L.R.'s] episodes of defiance have

'decreased from 3-4 episodes per day to 1-2 episodes.'" (R. at 23.) Accordingly, for all the reasons set forth above, it is clear that Plaintiff's Objections that the ALJ and thus the Magistrate Judge failed to consider the above evidence is without merit.

To the extent that Plaintiff generally objects to the weight the ALJ accorded certain evidence over others, this argument similarly fails. In his opinion, the ALJ was concerned about the inconsistencies in the Administrative Record and explained, after reviewing the evidence and hearing testimony, that he would accord the greatest weight to the testimony of J.L.R.'s teachers and J.L.R's behavior during the hearing. (R. at 21-22.)

> The [ALJ] has serious reservations as to whether assertions can be considered fully creditable concerning the degree of severity of the [J.L.R.] impairments in that there are inconsistencies in the record which do not reflect well on the totality of the allegations.

(Id. at 21.) For example:

> Although [Plaintiff] asserts that [J.L.R.] has been disabled since birth, she also testified that [J.L.R.] was first diagnosed as having ADHD disorder in 2004 [i.e., age four] and that she first noticed him exhibiting behavioral problems two and half to three years ago []. In his [or her] report of May 10, 2007 Jamie Camilleri, [J.L.R.'s] teacher, noted that [his] behavioral problems were related to his 'still adjusting to a new school in a new country and learning English," that "his behaviors . . . are very similar to other children his age," that he "is very independent" and "is doing well," that most of his issues stem from him not fully understanding English," that "he is picking up the language quickly," that he "shows no problems with fine or gross motor skills," that he is very much in control of his body," and that he "has no physical or cognitive disabilities."

(R. at 21.)

Plaintiff cites to cases which state that the ALJ may credit certain evidence more than others, but must give reasons for rejecting relevant evidence in the Administrative Record. (See Plumer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). Here, the ALJ did indicate the reasons for according greater weight to testimony and objective evidence:

13

> Accordingly, based upon a consideration of the subjective allegations weighed against objective medical evidence and other relevant information bearing on the issue of credibility, the [ALJ] finds that [Plaintiff's] assertions [about J.L.R.] are not fully credible concerning the severity of [his] ADHD and ODD impairments. Factors considered in this conclusion include [J.L.R.'s] demeanor at the hearing, the reports of credible educational and medical sources, and the degree of support services and medical treatment required.

(R. at 22.) The ALJ then gave specific reasons for crediting the testimony at the hearing from J.L.R.'s teacher and the state medical agent.

> The [ALJ] notes that no treating medical source has ever offered an opinion concerning [J.L.R's] specific functional limitations, and that the sole specific analyses of such limitations are the assessments offered by [J.L.R.'s] teachers (B1E, B2E, B3E, B7E, and B11E) and by Dr. Paul Taren (Exhibit B3F), a State agency medical consultant. The [ALJ] has accorded great weight to these assessment[s] as to the nature and severity of [J.L.R's] functional limitations because Jamie Camilleri, Ms. Vasquez, [illegible signature], Martha Gomez, and Melina Kuchinor are educational sources who have had first person and prolonged contact with [J.L.R.], because Dr. Taren is a medical consultant specifically trained in the evaluation of medical factors related to issues of disability, because they have provided specific reasons for their assessments demonstrating that their appraisals were well grounded in the educational and medical evidence of record, because they have cited specific limitations consistent with the evidentiary record as a whole, because educational and medical evidence received following the dates of their assessments does not offer any credible indication or suggestion of substantive limitations in excess of the cited opinions, and because any inconsistencies in their conclusions are minor and inconsequential at best.

(Id.)

Accordingly, for all the reasons stated above, Plaintiff's Objection that the ALJ and Magistrate Judge failed to consider all relevant and probative evidence and relied on "boilerplate" language is without merit.

> **B. Substantial Evidence Supported the ALJ's Conclusion That J.L.R. Did Not Suffer from a "Marked" Limitation in the Attending and Completing Tasks Domain**

Plaintiff's second Objection states that "the ALJ committed reversible error by failing to find a 'marked' limitation in the domain of 'attending and completing tasks.'" (Doc. No. 28 at

5.) Although this Objection is a verbatim recitation of Plaintiff's claim that went before the Magistrate Judge, it is nonetheless entitled to de novo review by this Court. Brown v. Astrue, 649 F.3d 193 (3d Cir. 2011). This domain, as explained by the ALJ

> considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the mental pace at which he performs activities and the ease of changing activities. Attending and completing tasks also refers to a child's ability to avoid impulsive thinking and his ability to prioritize competing tasks and manage his time (20 CFR 416.926a(h) and SSR 09-4p).

(R. at 24.)

In support of this Objection, Plaintiff generally argues that the ALJ and Magistrate Judge selectively considered which evidence to rely on, such as portions of narrative reports that suggest that J.L.R.'s behavior had improved, but not statements that J.L.R. continued to exhibit disruptive behavior. Specifically, Plaintiff contends that the ALJ failed to consider the "lengthy narrative reports provided by [J.L.R.'s] teachers and his TSS worker in favor of the Commissioner's check box forms."[8] (Doc. No. 28 at 6.) In sum, Plaintiff argues that "[t]he narrative reports show that [J.L.R.] is far more limited with respect to his ability to attend and complete tasks than was supposed by the ALJ, which represent legal error, which the R&R fails to address, or even acknowledge."[9] (Id. at 7.) This argument also is unavailing.

---

[8] The "check box forms" that Plaintiff refers to are labeled "Teacher Questionnaires" in the Administrative Record.

[9] Plaintiff generally takes issue with "check box forms" because they are standardized forms provided by the Commissioner, which require teachers to rate a child on a gradient scale. (Doc. No. 28 at 6-7.) In support of Plaintiff's argument, she cites to the case Mason v. Shalala where the Third Circuit stated that "[r]eports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." 994 F.2d 1058, 1065 (3d Cir. 1993).

The use of check box forms in Mason is distinguishable from this case. In Mason, the check box form was criticized because it was the only evidence speaking to the claimant's ability to stand and lift. The court noted that while "one medical report by an examining physician may

As discussed above, the ALJ and Magistrate Judge did not limit their review to the "Commissioner's check box forms." The ALJ and Magistrate Judge conducted a thorough review of J.L.R.'s mental health records and various narrative reports including: a letter from a TSS worker that Plaintiff contends was not considered, the reports from Jamie Camilleri, Ms. Vasquez, Martha Gomez, and Melina Kuchinor as educational sources, and the report of Dr. Paul Taren as a medical consultant. (See R. at 22; Doc. No. 16 at 17, 19-26.) The ALJ specifically relied on these reports because "their appraisals were well grounded in the educational and medical evidence of record." (R. at 22.) Accordingly, any argument that the ALJ and Magistrate Judge failed to consider all the evidence, including the narrative reports, or the letter from a TSS worker is belied by the ALJ and Magistrate Judge's citation to and analysis of these records.

Additionally, Plaintiff's argument that the ALJ and Magistrate Judge selectively relied on evidence that demonstrated J.L.R. was improving while ignoring evidence to the contrary is

---

constitute substantial evidence of a claimant's physical condition . . . this particular report alone may not." Mason, 994 F.2d at 1065. Moreover, the only other evidence on this point was claimant's testimony which was inconsistent with the check box form and "created a far starker picture." Id. Therefore, considering this check box form alone, "there was not substantial evidence to support a finding that [claimant] could stand long enough or lift enough weight to perform sedentary work." Id. at 1066.

Here, the ALJ and Magistrate Judge considered many documents, including check box forms, teacher's narrative reports, medical records, and testimony. The check box forms considered by the ALJ contain the same subject matter as the narrative reports and the testimony of J.L.R.'s teachers at the hearing. Accordingly, the ALJ's consideration of check box forms among many other types of evidence was not improper.

Moreover, Plaintiff fails to acknowledge that the questionnaires or "check box forms" here prompted J.L.R.'s teachers to provide short answers to questions. These forms are thus distinguishable from the forms used in Mason which did not provide room for additional explanation.

Finally, the Court notes that despite criticizing the check box forms, Plaintiff relies on a questionnaire from J.L.R.'s second grade teacher in this objection. (See Doc. No. 28 at 7.)

without merit. The ALJ acknowledged that "[J.L.R.] displays a variety of maladaptive behavioral problems such as aggressivity [sic], defiance, disruptiveness, hyperactivity, secrecy, etc." (R. at 21.) However, the ALJ found that these assessments were outweighed by the fact that

> these teachers have also appraised [J.L.R.] as no more than one serious degree of limitation out of fifty-three areas appraised [] and no more than two serious degrees of limitation out of fifty-three areas appraised []; the most recent teacher appraisal of June 18, 2010 [] cites no serious or very serious degrees of limitation.

(Id.) The ALJ thus concluded that

> [w]hile . . . [J.L.R.] displays above average difficulty in focusing and attending to tasks, is easily frustrated, and has difficulty in following through or completing tasks at times, the evidence of record also supports a conclusion that [J.L.R.] is capable of completing tasks over time and with positive reinforcement, and that his maladaptive behaviors have shown a significant degree of improvement over time.

(Id. at 24.)

Magistrate Judge Angell similarly weighed the feedback about J.L.R. in coming to her conclusion.

> The record reveals a young boy with some behavioral difficulties, but whose demeanor improves with medication. From kindergarten through second grade, "working without distracting self or others" was listed as an obvious to serious problem; it had been reduced to a slight problem by the end of third grade. "Sustaining attention during play/sports activities, focusing long enough to finish an assigned activity or task and refocusing to task when necessary" were either a slight problem or no problem. J.L.R.'s problem with working without distracting himself or others went from a serious problem to a slight problem at the end of third grade. "Completing class/homework assignments and completing work accurately without careless mistakes," too, were found to be slight or no problem for J.L.R. May his progress continue. Substantial evidence supports the finding of the ALJ that J.L.R. maintains a less than marked limitation of functioning in the domain of attending and completing tasks.

(Doc. No. 26 at 26-27.)

The Court does not dispute that there is counter evidence that highlights J.L.R.'s behavioral difficulties with respect to attending and completing tasks, but this evidence was addressed by the ALJ and Magistrate Judge in coming to their conclusions. See Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000) ("[T]he ALJ may weigh the credibility of the evidence, [and] he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.").

In light of these unavailing arguments, and following a review of the ALJ's opinion and the Magistrate Judge's R&R, there was substantial evidence for the ALJ to find that J.L.R. did not suffer from a marked limitation in the domain of attending and completing tasks. The Record shows that J.L.R.'s issues in this domain were managed on an organized and continuous medication regimen. Moreover, J.L.R. was described as intelligent and one of the highest performing students in his class. This high academic performance was relied on by both the ALJ and Magistrate Judge in coming to their conclusions on this domain. See Miller ex rel. Miller v. Colvin, No. 3:13-cv-32458, 2014 WL 4793958, at *3 (M.D. Pa Sept. 24, 2014) (finding that proficient academic performance as evidence of functionality in the domain of "attending and completing tasks").

Both the ALJ and Magistrate Judge cited to and discussed the evidence that Plaintiff contends they failed to consider. (R. at 21-22, 24-25; Doc. No. 26 at 24-30.) A conclusion that is unsatisfactory to the Plaintiff is not a basis for this Court to find that the ALJ erred or did not rely on substantial evidence. After a thorough review of the Administrative Record, this Court finds that the ALJ's conclusion that J.L.R. did not have a "marked" limitation in the domain of "attending and completing tasks" was supported by substantial evidence. Thus, for all the foregoing reasons, Plaintiff's second Objection is meritless.

### C. The Court Will Not Analyze the Third Objection Because Plaintiff Would Not Prevail under the Requirements of the Social Security Act

Having found that substantial evidence supported the ALJ's conclusion that J.L.R. did not have a "marked" limitation in the "attending and completing tasks" domain, the only way for J.L.R. to be considered disabled under the Social Security Act would be if he had an "extreme" limitation in one domain. Here, Plaintiff's third Objection contends that the ALJ failed to find a "<u>marked</u>" limitation in the "interacting and relating with others" domain. (Doc. No. 28 at 7-8) (emphasis added.) Even if the ALJ failed to find a "marked" limitation in this domain, J.L.R. would still fail to satisfy the requirement of having a "marked" limitation in <u>two</u> domains as required by the SSA. Therefore, this Court will not address this Objection.

The court in <u>Miller v. Colvin</u> was faced with a similar situation. No. 3:13-cv-2458, 2014 WL 4793958, at *16 (M.D. Pa Sept. 24, 2014). The court in <u>Miller</u> had concluded that substantial evidence supported a determination that the claimant did not suffer from an extreme limitation in attending and completing tasks. Accordingly, the court "decline[d] to address whether the ALJ erred in failing to find that [the claimant] had a marked limitation in attending and completing tasks, because a marked limitation in only one domain would still require the ALJ to find [the claimant] was not disabled. <u>Id.</u> at *15-16. Here, Plaintiff would similarly fail to meet the requirements of the SSA even if this court found that the ALJ erred in failing to find a "marked" limitation in the domain of "interacting and relating with others." Therefore, the Court will overrule this Objection.

### VIII. CONCLUSION

The ALJ's decision to deny Plaintiff benefits is supported by substantial evidence in the Administrative Record. Accordingly, the Court will adopt Magistrate Judge Angell's R&R and overrule Plaintiff's Objections. An appropriate Order follows.